IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re AN ARBITRATION IN LONDON, ENGLAND BETWEEN<br><br>NORFOLK SOUTHERN CORPORATION, NORFOLK SOUTHERN RAILWAY COMPANY, AND GENERAL SECURITY INSURANCE COMPANY<br><br>and<br><br>ACE BERMUDA LTD. | No. 09 C 3092 |

## MEMORANDUM OPINION AND ORDER

Before me is a motion by Norfolk Southern Corporation, Norfolk Southern Railway Company, and General Security Insurance Company (collectively, "movants") seeking an order to require Scott Carey, former counsel to ACE Bermuda Ltd. ("ACE"), to appear for a deposition in Chicago so that his testimony may be used in connection with an ongoing arbitration in London, England. Movants request this relief under 28 U.S.C. § 1782. For the reasons discussed below, I deny their motion.

The parties' underlying dispute relates to insurance coverage for losses incurred in connection with a train derailment in Graniteville, South Carolina. Mr. Carey represented certain insurance and reinsurance companies, including ACE, and movants assert that he has personal knowledge of facts relevant to the parties' dispute. The London arbitration is being conducted

pursuant to arbitration provisions in a reinsurance policy issued by ACE, in which General Security Insurance Company is the "Named Entity" and Norfolk Southern Corporation is the "Named Insured."[1]

Movants assert that § 1782 authorizes me to order Mr. Carey to provide deposition testimony for use in the London arbitration, and that I should exercise my statutory discretion to do so. Mr. Carey opposes the motion, arguing that the statute does not authorize me to grant the relief movants seek, and that even if it does, I should decline to exercise my discretion to compel his deposition.[2]

In its current form, § 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or

---

[1] ACE included this policy as an exhibit to its response to the pending motion and asserted that the London arbitration is being conducted pursuant to the policy. As neither movants nor Carey have disputed this assertion, I assume that the identified policy indeed contains the governing arbitration provisions.

[2] ACE also opposed the motion, but because the grounds asserted in Carey's response are sufficient to deny the motion, I address only Carey's opposition.

2

> statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.
>
> A person may not be compelled to give his testimony or statement or to produce a document or thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a). Mr. Carey's opposition to the motion focuses on the statutory meaning of the phrase "a foreign or international tribunal."

As discussed in the leading Supreme Court case interpreting § 1782, *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), the statute "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Id*. at 247. The Supreme Court explained that federal courts have been authorized to provide such assistance since 1885. *Id*. Early legislation was limited to providing assistance in foreign proceedings in which a foreign government was a party or had an interest. *Id*. at 248. The scope of authorized assistance was broadened in 1948 with the passage of legislation that became § 1782. *Id.* The new statute authorized courts to assist in evidence-gathering in connection with "any civil action" pending in a "court in a foreign country," not merely those in which a foreign government was a party or had an interest. *Id*. The statute was further broadened the following

year, when Congress replaced the phrase "civil action" with the phrase "judicial proceeding." *Id*.

"[P]rompted by the growth of international commerce," § 1782 was completely revised in 1964. *Intel*, 542 U.S. at 248. The 1964 revisions deleted the phrase "in any judicial proceeding pending in any court in a foreign country," replacing it with the text that appears in the statute's current form: "in a proceeding in a foreign or international tribunal." In *Intel*, the Court clarified that this phrase encompassed "administrative and quasi-judicial proceedings" such as those at issue in that case, where the party asserting § 1782 sought to obtain evidence to support a complaint filed in the Directorate-General for Competition ("DG Competition") of the Commission of the European Communities.

The parties agree that *Intel* does not expressly resolve whether private arbitrations fall within the scope of § 1782. Relying on precedent from the Second and Fifth Circuits (the Seventh Circuit has yet to address this issue), however, Mr. Carey argues that "only governmental entities, such as administrative or investigative courts, acting as state instrumentalities or with the authority of the state" fall within the purview of § 1782, as evidenced by the statute's legislative history. This is, indeed, what the Second and Fifth Circuits concluded in *National Broadcasting Co., v. Bear Stearns & Co.*, 165 F.3d 184, 189 (2nd Cir. 1999) and *Republic of Kazakhstan v. Beidermann International*, 168 F.3d 880 (5th Cir.

1999)(following *National Broadcasting* and observing, "[t]here is no contemporaneous evidence that Congress contemplated extending § 1782 to the then-novel arena of international commercial arbitration." *Id*. at 881-82). Of course, both of these cases predate *Intel*, and movants point out that the majority of courts to have considered, post-*Intel*, whether private arbitral tribunals fall within the ambit of § 1782 have concluded that they do. *See In re Application of Babcock Borsig AG*, 583 F.Supp.2d (D.Mass. 2008); *Comision Ejecutiva Hidroelectrica Del Rio Lempa v. Nejapa Power Co.*, LLC, No. 08-135-GMS, 2008 WL 4809035 (D.Del., Oct. 14, 2008); *In re Hallmark Capital Corp.*, 534 F.Supp.2d 951 (D.Minn. 2007); *In re Roz Trading Ltd.*, 469 F.Supp.2d 1221 (N.D. Ga., 2006). A minority of courts, however, have held that private arbitrations remain outside the scope of the statute. *See Comision Ejecutiva Hidroelectrica Del Rio Lempa v. El Paso Corp.*, No. H-08-335, 2008 WL 5070119 (S.D. Tex. Nov. 20, 2008); *In re Matter of the Application of Oxus Gold PLC*, No. MISC. 06-82, 2006 WL 2927615 (D.N.J. Oct. 11, 2006)(holding that § 1782 applied to arbitration conducted by the UN Commission on International Law ("UNCITRAL"), but noting that "international arbitral panels created exclusively by private parties...are not included in the statute's meaning." *Id*. at *6 (citing *National Broadcasting*, 165 F.3d at 186, 190)).

Having reviewed the cited cases and closely considered the Court's analysis in *Intel*, I conclude that the arbitration at issue

in this case is outside the scope of § 1782. It is true, as some courts have noted, that the *Intel* Court both "emphasized Congress's intent to expand the applicable scope of § 1782(a)," *In re Babcock*, 583 F.Supp.2d at 240, and favorably quoted, albeit in dictum, a definition of the statutory term "tribunal" that expressly includes "arbitral tribunals." *Id.*, citing *Intel*, 542 U.S. at 258 ("'[t]he term 'tribunal' ... includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts,'" (quoting Smit, *International Litigation under the United States Code*, 65 COLUM. L.REV. 1015, 1026 n. 71 (1965))).[3] Nevertheless, although the *Intel* Court acknowledged the ways in which Congress has progressively broadened the scope § 1782, it stopped short of declaring that *any* foreign body exercising adjudicatory power falls within the purview of the statute. Indeed, the ellipses in the Court's citation to Smit (without which Smit's definition reads, "[t]he term 'tribunal' *embraces all bodies exercising adjudicatory powers, and* includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies, as well as conventional civil, commercial, criminal, and administrative courts" (emphasis added)), suggest that

---

[3]The significance of Professor Smit's understanding of § 1782 is not to be underestimated, as he has been acknowledged as the "dominant drafter of, and commentator on, the 1964 revision of 28 U.S.C. § 1782." *In re Letter of Request from Crown Prosecution Service*, 870 F.2d 686, 689 (D.C. Cir. 1989).

6

the Court was not willing to embrace the full breadth of Smit's definition. Moreover, as the analysis in *In re Matter of the Application of Oxus Gold PLC* illustrates, a reasoned distinction can be made between arbitrations such as those conducted by UNCITRAL, "a body operating under the United Nations and established by its member states," and purely private arbitrations established by private contract. *Id*. at *6. While the private arbitral tribunal at issue here likely falls within the scope of "all bodies exercising adjudicatory powers," the *Intel* Court's language did not endorse such a broad definition of "tribunal." Accordingly, I interpret the *Intel* Court's reference to "arbitral tribunals" as including state-sponsored arbitral bodies but excluding purely private arbitrations. *See also Republic of Kazakhstan*, 168 F.3d 880, 882 ("References in the United States Code to 'arbitral tribunals' almost uniformly concern an adjunct of a foreign government or international agency.")

Further support for this interpretation is the *Intel* Court's discussion of the role that DG Competition plays in enforcing European law, and the relationship of DG Competition to the major European judicial authorities, the Court of First Instance and the European Court of Justice. The Court explained that DG Competition's "overriding" responsibility is to conduct investigations, either *sua sponte* or pursuant to a complaint, into alleged violations of European Union competition laws. *Inte*l, 542

7

U.S. at 254. DG Competition may consider information provided by a complainant, and may also solicit information from the target of the complaint. *Id.* The DG Competition then decides whether to pursue the complaint. *Id.* The decision not to proceed is reviewable by the Court of First Instance, and, ultimately, by the European Court of Justice, which is the "court of last resort for European Union matters." *Id.* If DG Competition decides to pursue the complaint, the target of the investigation is entitled to a hearing before an independent officer, who provides a report to DG Competition. *Id.* at 255. If DG Competition ultimately concludes that the target has violated European competition laws, it may recommend that the European Commission impose penalties. The European Commission's final action dismissing the complaint or imposing liability is also subject to review by the Court of First Instance and the European Court of Justice. *Id.*

At several points in its analysis, the *Intel* Court emphasized the relevance of the ultimate reviewability of DG Competition's decisions by European courts to its conclusion that DG Competition itself fell within the purview of § 1782. *Id.* at 255 ("the statute authorizes, but does not require, a federal district court to provide assistance to a complainant in a European Commission proceeding that leads to a dispositive ruling, *i.e.*, a final administrative action both responsive to the complaint *and reviewable in court*." (Emphasis added)), 259 ("we hold that §

8

1782(a) requires only that a dispositive ruling by the Commission, *reviewable by the European courts*, be within reasonable contemplation.") (Emphasis added)[4]

By contrast, private arbitrations are generally considered alternatives to, rather than precursors to, formal litigation. Indeed, it is common for arbitration provisions in private contracts to include a waiver of review by courts. Indeed, that is the case here. The section of ACE's reinsurance policy captioned "ARBITRATION" states that the decision of the "Board" (as previously defined) is final and binding on the parties, and that

> Such decision shall be a complete defense to any attempted appeal or litigation of such decision in the absence of fraud or collusion. Without limiting the foregoing, the parties waive any right to appeal to, and/or seek collateral review of the decision of the Board of Arbitration by any court or other body to the fullest extent permitted by applicable law.

It is clear from this text that the very narrow circumstances in which the Board's decisions may be subject to review does not allow for judicial review of the merits of the parties' dispute. Accordingly, the "arbitral tribunal" at issue here does not fall within the definition the Supreme Court embraced in its *Intel* dictum.

---

[4] I also note that is not unreasonable to suppose that if the *Intel* Court had intended its holding to extend § 1782 to purely private arbitrations, it might have made some mention of the Second and Fifth Circuit authority expressly holding the contrary. The Court referred to neither case, however.

For the foregoing reasons, and because I generally agree with the conclusion of the Second and Fifth Circuits that the legislative history of § 1782 does not support the inclusion of private arbitral tribunals within the scope of § 1782(a), I am without authority to order the relief movants seek. Accordingly, their motion is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: June 15, 2009